

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
April 21, 2023 12:47 PM
     PAVAN PARIKH
    Clerk of Courts
  Hamilton County, Ohio
  CONFIRMATION 1311571
```

| | |
|---|---|
| **JANE DOE** | **A 2301677** |
| **vs.** | |
| **ARCHDIOCESE OF CINCINNATI** | |

## FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND

## PAGES FILED: 12

EFR200

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| JANE DOE<br>c/o Angela L. Wallace<br>119 East Court Street, Suite 500<br>Cincinnati, OH  45202<br><br>and<br><br>JOHN DOE<br>c/o Angela L. Wallace<br>119 East Court Street, Suite 500<br>Cincinnati, OH  45202<br><br>     Plaintiffs,<br><br>   -vs-<br><br>ARCHDIOCESE OF CINCINNATI<br>100 East Eighth Street<br>Cincinnati, OH  45202,<br><br>and<br><br>ARCHBISHOP MOELLER<br>HIGH SCHOOL<br>9001 Montgomery Road<br>Cincinnati, OH  45242<br><br>and<br><br>MICHAEL ASBECK<br>9416 Amber Lane<br>West Chester, OH  45069<br><br>     Defendants. | Case No. _____<br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT**<br>**WITH JURY DEMAND** |

Plaintiffs Jane Doe and John Doe, for their complaint against Defendants Archdiocese of Cincinnati, Archbishop Moeller High School, and Michael Asbeck, state as follows:

## PARTIES

1. Plaintiff Jane Doe ("Mrs. Doe") is a female resident of Hamilton County, Ohio. She desires to proceed pseudonymously due to the subject matter alleged here.

2. Plaintiff John Doe ("Mr. Doe") is a male resident of Hamilton County, Ohio and the spouse of Mrs. Doe. He desires to proceed pseudonymously due to the subject matter alleged here.

3. Defendant Archdiocese of Cincinnati ("Archdiocese") is domesticated in Hamilton County, Ohio.

4. At all times relevant to this Complaint, the Archdiocese owned, operated, and managed Defendant Archbishop Moeller High School ("Moeller"), which is located in Hamilton County, Ohio. Defendant Archdiocese and Defendant Moeller are collectively referred to as "Moeller."

5. Defendant Michael Asbeck ("Asbeck") is a resident of the State of Ohio and the former Athletic Director at Moeller.

## FACTS

6. In June 2000, Mrs. Doe was hired at Moeller as the administrative assistant to the Dean of Students. Mrs. Doe moved to the role of administrative assistant to the athletic director at Moeller in 2003.

7. In 2012, following the retirement of the former athletic director, Asbeck was hired as athletic director at Moeller. Upon his hiring, Asbeck became the direct supervisor of Mrs. Doe.

8. Moeller ignored its own policies and procedures in hiring Asbeck. Asbeck was hired without necessary interviews, without involvement by a hiring committee, and without required vetting through the Archdiocese.

9. Asbeck was actively participating in anger management therapy at the time he was hired by Moeller.

10. Soon after Asbeck's arrival as athletic director, he engaged in a course of action to isolate Mrs. Doe and ensure that she was beholden solely to him. For example, prior to Asbeck's employment, Mrs. Doe performed work under a multitude of individual contracts for each sport. Mrs. Doe was paid for each contract. Asbeck removed Mrs. Doe's contracts, but insisted she continue to perform the work she would have performed under the contracts. Mrs. Doe no longer received compensation for the work she was required to complete. Asbeck's instructions and purpose were clear: Mrs. Doe was to take instruction solely from him; Mrs. Doe was not permitted to work for individual sport coaches; and Mrs. Doe's compensation was at the mercy of Asbeck.

11. Prior to the occurrence of the acts described below, while employed at Moeller, Asbeck engaged in inappropriate sexual conduct and sexual harassment of another female on at least one occasion at a Moeller function. Moeller knew of Asbeck's conduct and paid a financial settlement to ensure that no legal action was taken against Asbeck or Moeller. However, Asbeck faced no discipline and continued in the employ of Moeller despite his acts and Moeller's knowledge of those acts.

12. During Asbeck's tenure as athletic director at Moeller, Mrs. Doe witnessed, first-hand, Asbeck's volatile and violent behavior toward those around him, including, but

not limited to, physical aggression and manhandling of Moeller student athletes on the sideline, verbal abuse of Moeller coaches, and volatile arguments with sports referees.

13. Beginning in 2016, and continuing through February 2021, Asbeck subjected Mrs. Doe to unwanted and unsolicited sexual advances. While on Moeller's campus, and during the course of Mrs. Doe's job duties, Asbeck:

   a. Continually commented on Mrs. Doe's clothing choices and appearance;

   b. Touched and hugged Mrs. Doe inappropriately, at times when Mrs. Doe was unable to escape;

   c. Insisted that Mrs. Doe stand closer while working at a shared computer or reviewing a document;

   d. Reported to Mrs. Doe, in graphic detail, his reaction to her; and

   e. Suggested that Mrs. Doe engage in a sexual relationship with him.

14. Mrs. Doe consistently and repeatedly denied Asbeck's sexual advances, and avoided Asbeck in every way possible.

15. The athletic office at Moeller is geographically separated from all other offices and classrooms at Moeller. The athletic office consists of offices solely for Mrs. Doe and Asbeck. No other personnel were located within hearing or sight of the athletic office.

16. Mrs. Doe's daily work environment placed her in an isolated location, in direct contact with Abeck. Moeller administration did not permit Mrs. Doe to move her office outside of the geographical location of the athletic office.

17. From 2016 through January 2021, Mrs. Doe repeatedly told Moeller that she was unable to work for Asbeck, and asked Moeller to transfer her out of the athletic department and assign her to a different supervisor. Moeller refused.

18. Mrs. Doe repeatedly told the principal of Moeller that she was unable to continue working for Asbeck. Moeller's principal took no action to discern the cause of the disagreement or to ensure Mrs. Doe a safe working environment.

19. In September 2020, following a Saturday football game at Moeller's campus, Asbeck trapped Mrs. Doe in the Moeller athletic office and made sexual advances toward her. Mrs. Doe refused Asbeck's advances, and reminded him that there were security cameras in the office. Asbeck then pulled Mrs. Doe into his personal office, where he was confident there were no security cameras, and kissed and groped her. Asbeck described graphically what sexual actions he intended to engage in with Mrs. Doe. Asbeck's conduct was carried out by force and was against the wishes of Mrs. Doe. Mrs. Doe was eventually able to escape Asbeck, and left the athletic office.

20. In December 2020, Asbeck cornered Mrs. Doe within the Moeller concession stand, while Mrs. Doe was working to arrange concession stand supplies. Asbeck taunted Mrs. Doe with the fact that there were no cameras located in the concession stand. Then Asbeck trapped Mrs. Doe in a corner of the concession stand and raped her, as defined by R.C. 2907.01(A).

21. Immediately following this assault, Mrs. Doe sought a meeting with Moeller's president. He was out of town but agreed to meet upon his return. At Mrs. Doe's meeting with Moeller's president, Mrs. Doe again asked to be transferred out of the athletic department. Moeller's president asked if Asbeck was the reason for the transfer request. Mrs. Doe shared that she was unable to work with Asbeck, that she was not safe with him, and asked for confidentiality. Moeller's president took no action.

22. On January 13, 2021, Mrs. Doe also met with Moeller's principal. Mrs. Doe again asked to be transferred out of the athletic department. Mrs. Doe once again told Moeller's principal that she was unable to work with Asbeck, and that she was not safe as long as she was working for Asbeck. Moeller's principal took no action.

23. For several weeks following the December 2020 assault, Mrs. Doe was able to avoid Asbeck due to the school holiday and Asbeck's Covid diagnosis.

24. On January 19, 2021, in a conversation with Mrs. Doe, Asbeck admitted to assaulting Mrs. Doe. Mrs. Doe recorded this conversation.

25. On January 20, 2021, Mrs. Doe's legal counsel met with Moeller's president, principal, chief financial officer, and legal counsel, and presented a formal written complaint regarding Asbeck's conduct.

26. In the presence of legal counsel, with a written complaint in hand, Moeller was finally forced to take action. Asbeck was placed on administrative leave and subsequently terminated.

27. In the immediate aftermath of the January 20th meeting, Moeller administration expressed their support of Mrs. Doe. This support quickly crumbled. In the weeks and months that followed, Moeller engaged in a course of conduct that fostered a working environment that was impossible for Mrs. Doe to endure, and which eventually led to her constructive termination.

28. Following Asbeck's termination, Mrs. Doe was forced to complete all duties of her position, and also perform most duties of Asbeck's position as well.

29. Mrs. Doe's suffered significant physical and mental health issues as a result of Asbeck's harassment and Moeller's response. Mrs. Doe, who had no history of mental

health issues, was diagnosed with post-traumatic stress disorder as a result of repeated trauma involving Asbeck.

30. Mrs. Doe requested accommodations from Moeller to help minimize the effects of the post-traumatic stress disorder. Moeller refused all accommodations. Instead, Moeller consistently acted in a way that created a work environment so hostile that Mrs. Doe was unable to perform her job.

31. Due to the increasingly hostile work environment that Mrs. Doe was subjected to, Mrs. Doe's mental health professional ordered Mrs. Doe to take time off under the Family Medical Leave Act. When Mrs. Doe's FMLA leave expired, faced with the prospect of returning to the same hostile work environment, Mrs. Doe had no choice but to resign.

32. Mrs. Doe was unable to work due to Moeller's refusal to provide the requested reasonable accommodations, which were necessitated by Asbeck's harassment. Because Moeller refused to provide these reasonable accommodations, Mrs. Doe was constructively terminated on December 31, 2021.

33. As required by R.C. 4112.052, Mrs. Doe filed a charge with the Ohio Civil Rights Commission and has received her notice of right to sue.

**COUNT ONE – R.C. 4112.02(A)/TITLE VII OF THE CIVIL RIGHTS ACT
(DISCRIMINATION BASED ON SEX)**

34. Plaintiffs incorporate the allegations of paragraphs 1-33 of the Complaint as if fully restated herein.

35. In connection with her employment at Moeller, Mrs. Doe was subjected to unlawful discriminatory practices due to her sex.

36. As a result of the unlawful discriminatory conduct, Mrs. Doe was denied a tangible economic benefit.

37. As a result of the unlawful discriminatory conduct, Mrs. Doe was forced to endure a hostile work environment.

38. During Asbeck's tenure at Moeller, Mrs. Doe was subjected to unwelcome sexual harassment by Asbeck, her supervisor, which was based solely on her sex.

39. The harassing conduct was so severe and pervasive that it effected the terms, conditions, and privileges of her employment.

40. Defendants have violated R.C. 4112.02(A) and 42 U.S.C.S. §2000e, *et seq*.

41. As a result of Defendants' conduct, Mrs. Doe has been damaged in an amount to be proven at trial, which amount is in excess of $25,000.

**COUNT TWO – R.C. 4112.02(A)(DISCRIMINATION BASED ON DISABILITY)**

42. Plaintiffs incorporate the allegations of paragraphs 1-41 of the Complaint as if fully restated herein.

43. Mrs. Doe was diagnosed with post-traumatic stress disorder, a mental health disability. Moeller was aware of this diagnosis.

44. Due, in part, to Mrs. Doe's disability, Moeller created a hostile work environment for Mrs. Doe which led to her constructive termination.

45. Despite Mrs. Doe's disability, she was able to safely and substantially perform the essential functions of her job with Moeller, and had been performing those functions until her constructive termination.

46. Defendants have violated R.C. 4112.02(A).

47. As a result of Defendants' conduct, Mrs. Doe has been damaged in an amount to be proven at trial, which amount is in excess of $25,000.

### COUNT THREE – R.C. 4112.02(I)/TITLE VII OF THE CIVIL RIGHTS ACT

48. Plaintiffs incorporate the allegations of paragraphs 1-47 of the Complaint as if fully restated herein.

49. Mrs. Doe engaged in a protected activity by reporting Asbeck's sexual harassment to Moeller administration.

50. Mrs. Doe's employer knew of her participation in the protected activity.

51. Mrs. Doe suffered an adverse employment action as a direct result of reporting Asbeck's sexual harassment.

52. Moeller took adverse action against Mrs. Doe with respect to her employment at Moeller and Mrs. Doe's working conditions in retaliation for her report of sexual harassment.

53. Defendants have violated R.C. 4112.02(I) and 42 U.S.C.S. §2000e, *et seq*.

54. Due to Moeller's retaliation against her, Mrs. Doe has been injured in an amount to be proven at trial, which amount is in excess of $25,000.

### COUNT FOUR – NEGLIGENT HIRING, RETENTION, AND SUPERVISION

55. Plaintiffs incorporate the allegations of paragraphs 1-54 of the Complaint as if fully restated herein.

56. At all times relevant to this Complaint, Asbeck was employed by Moeller.

57. In connection with previous employment through the Archdiocese or related entities, and during his employment with Moeller, Asbeck repeatedly engaged in sexual harassment of multiple females.

58. Asbeck's harassing conduct was known, or should have been known, to Moeller.

59. As a result of Asbeck's harassment, Mrs. Doe suffered injuries.

60. Moeller's negligent hiring, retention, and/or supervision of Asbeck was the proximate cause of Mrs. Doe's injuries.

61. As a result of Moeller's negligence, Mrs. Doe has been injured in an amount to be proven at trial, which amount is in excess of $25,000.

**COUNT FIVE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

62. Plaintiffs incorporate the allegations of paragraphs 1-61 of the Complaint as if fully restated herein.

63. By sexually assaulting and sexually harassing Mrs. Doe, Asbeck intended to cause Mrs. Doe emotional distress, or knew or should have known that his actions would result in serious emotional distress.

64. Asbeck's conduct against Mrs. Doe was so extreme and outrageous that it was beyond all possible bounds of decency.

65. Asbeck's conduct was the proximate cause of Mrs. Doe's mental health condition and diagnoses.

66. The mental anguish suffered by Mrs. Doe is so serious that no reasonable person could be expected to endure it.

67. As a result of Asbeck's conduct, Mrs. Doe was forced to seek mental health treatment.

68. As a result of Asbeck's intentional infliction of emotional distress, Mrs. Doe has been injured in an amount to be proven at trial, which amount is in excess of $25,000.

## COUNT SIX – VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

69. Plaintiffs incorporate the allegations of paragraphs 1-68 of the Complaint as if fully restated herein.

70. At all times relevant to this Complaint, Defendant Asbeck was employed by Moeller.

71. At all times relevant to this Complaint, Defendant Asbeck was in a supervisory capacity to Mrs. Doe.

72. At all times relevant to this Complaint, Defendant Asbeck was acting within the scope of his employment.

73. Defendants' intentional and negligent conduct directly and proximately caused Mrs. Doe's injuries.

74. Moeller is liable for tortious actions of its administrative staff, including the malicious, wanton, and reckless acts of its staff, in an amount to be proven at trial, which amount is in excess of $25,000.

## COUNT SEVEN – LOSS OF SOCIETY/LOSS OF CONSORTIUM

75. Plaintiffs incorporate the allegations of paragraphs 1-74 of the Complaint as if fully restated herein.

76. At all times relevant to this Complaint, Plaintiffs Mr. Doe and Mrs. Doe were married.

77. As a direct and proximate result of Defendants' conduct and omissions, Mr. Doe has sustained diminished care and services of his wife, Mrs. Doe.

78. As a result of Defendants' conduct, Mr. Doe has been damaged in an amount to be proven at trial, which amount is in excess of $25,000.

**WHEREFORE**, Plaintiffs Mr. Doe and Mrs. Doe judgment against Defendants as follows:

A. That this Court enter a money judgment against Defendants in the amount of loss and damages that Plaintiffs have suffered, which amount is in excess of $25,000;

B. That this court award punitive damages against Defendants in an amount sufficient to punish them for their wanton, willful, and malicious conduct and deter them and others from engaging in such conduct;

C. That Plaintiffs be awarded their costs of suit, including reasonable attorney fees; and

D. That Plaintiffs be awarded such other relief as may be just and proper.

Respectfully submitted,

*Angela L. Wallace*
Angela L. Wallace (#0080771)
Blessing & Wallace Law, LLC
119 East Court Street, Suite 500
Cincinnati, OH 45202
Phone: (513) 621-9191
Email: angie@blessingwallacelaw.com

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

*Angela L. Wallace*